IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **(802) 249-7653**, THAT IS STORED AT PREMISES CONTROLLED BY **VERIZON** WIRELESS LOCATED AT 180 WASHINGTON VALLEY ROAD, BEDMINSTER, NJ 07921 | Case No. 20-mj-144-01-DL |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, **Richard A. Norris**, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **(802) 249-7653**, that is stored at premises controlled by **VERIZON WIRELESS and all of its subsidiaries and affiliates ("VERIZON WIRELESS")**, a wireless telephone service provider headquartered at **180 Washington Valley Road, Bedminster, NJ 07921**. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require **VERIZON WIRELESS** to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.  I am a Lieutenant with the Lebanon NH Police Department. I have been a full-time Police Officer since 2005. I currently supervise the Lebanon Police Department Cyber Crimes Unit and I have been trained in undercover online ad posting and chatting. I have been

directly involved as the lead investigation in online chat investigations and I have supervised other investigators as they conducted online chat investigations. I have a Bachelor Degree (Criminal Justice), in which I attained from Saint Anselm College (2005).

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Title 18, United States Code, § 2423(b) makes it a federal crime for a person to travel in interstate commerce "with a motivating purpose of engaging in any illicit sexual conduct with another person." Attempts and conspiracies to commit this offense are punishable in the same manner as a completed violation. "Illicit sexual conduct" includes "any commercial sex act (as defined in section 1591) with a person under 18 years of age." 18 U.S.C. § 2423(e). "Commercial sex act" means "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3).

5. Based on the facts set forth in this affidavit, there is probable cause to believe that DAVID FARNHAM committed violations of **18 U.S.C § 2423(b), Travel with Intent to Engage in Illicit Sexual Conduct**. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

6. On May 12, 2020, while working in my undercover capacity, I posted an ad on the social networking site Craigslist. The ad was posted as part of a proactive online investigation designed to identify individuals seeking out minors for illicit sexual activity. The ad was titled "Family Fun (Lebanon NH)" and the body read "Daddy and daughter looking to

2

have some family fun. If interested you must be able to travel. Roses are a must. No fakes!"

Based on my training and experience, I know that the term "roses" in this context means money.

7. On May 12, 2020 at approximately 5:42pm I received an e-mail reply to my ad from a male who was later identified as David Farnham. My identity during this investigation was "John". The email I received read as follows:

Farnham: What are you looking at for family fun? Are you looking for a man or woman?

8. I replied to Farnham's email on May 13, 2020 and the following exchange took place:

Me: Hey. I'm 45 and my daughters 15. If thats a problem for you then i get it.

Farnham: Is she all for playing I'm interested can you send me a picture of the both of you

Me: She loves playing.. i dont share pics, i hope you understand why. i need to be safe

Farnham: Well can you at least tell me what she looks like body size and what not what do you two like to do

Farnham: I'm very interested in playing as long as you are not in any way connected with the police

Farnham: Hey man don't keep me in suspense

Farnham: I could host the both of you today

Me: We don't travel, we host. It's a safety thing for us. My daughter is named Emma. Shes about 503, 105lbs, blonde hair, green eyes

Farnham: She sounds hot I asked before but maybe you didn't see it you're not affiliated with the law that all are you and how many roses does it take to play

Me: No i'm not affiliated with the law. Roses depends on what you want. It's not safe to talk details via e-mail. Text me. 603-417-4172

3

9. The conversation would move to text messaging and the following are excerpts of the conversation:

Farnham: Family fun?

Me: Hey sup

Farnham: What are the ranges of the Roses

Me: Depends on what you're looking for with Emma. Typically roses range from $75-$200

Farnham: Could you tell me how big are little titties

Me: 34B

Farnham: And do you have a real good place to host I don't want to take any chances either that's why I kind of mentioned that I could host in a nice big house about a half hour away and I wouldn't mind adding a little extra for the trip

Me: Yes I have a nice place in leb. I getcha but I can lose my daughter so I have to be careful. That's why I host all the time

Farnham: Okay does your wife know about this or does she play also? And I don't quite understand how you could lose your daughter but I suppose I don't need the details but I would be willing to offer you three bills if you were to come up this way.

Me: No my wife and I are divorced. I can lose emma cuz she's 15 and if you're the law or this is a setup then I'm fucked

Farnham: trust me man I am not the law I am just a totally deprived married man that is hornier than hell. Does Emma shave your pussy or does she have a little hair there

Me: She's shaved

Farnham: I bet she is sweet tasting

Me: You'll have to come to us man.. I have to be safe. You won't regret it

Farnham: I'm sure I won't it's just hard for me to get away are you right in town or are you kind of in a secluded area

Farnham: And is Emma on birth control

Farnham: And when can you host

4

Me: She is on birth control. I would meet up with you in town to make sure that you're real and then you can follow me to my house which is on the outskirts of leb

Farnham: When can you host

Farnham: And how long what I'd be able to play with her her 200

Me: I could meet you @ 430 today or tomorrow

Me: Well it depends what you want. I need to approve of it before we meet

Farnham: Can you do or earlier in the day or should I say can Emma do earlier in the day it's hard for me to get away that time of day

Farnham: I wouldn't want anyting that would cause any pain or anything I think what I would want would be to have Emma suck me and let me suck her tits and eat her pussy a little bit and then have regular sex nothing kinky

Me: Ok ya that's allowed. I can give you 2 hours with her for 200

Farnham: That Sounds fair it has been a long time since I've had a young lady can I ask if she comes while somebody is eating her hot little pussy

10. The conversation would progress and the following messages were exchanged:

Farnham: If it's any help I am a firefighter I'm an engineer for the Water District and I serve on a lot of boards in my town

Me: Oh we're very real

Me: I could probably meet you at 10 tomorrow morning

Farnham: That would work whereabouts would you want to meet in Lebanon I'm not that familiar with the streets I'm sure I can find you

Farnham: I didn't ask what does m I like to suck cock

Farnham: Does Emma like to

Me: I'll text you meet details later today

Me: Yes she loves cock

Farnham: That's nice this has got me so f****** horny that I would give you 350 cash if you would bring that sweet little lady up to me this afternoon or anytime before 4

Me: Sorry Dave. You travel to us or no deal

Farnham: Okay I'll be here tomorrrow morning once I have an address to meet you how's that I guess I'll just have to suffer for the day

11. A meeting was set for May 14, 2020 at 10:00am on Market Street in West Lebanon. Prior to this meet I had obtained a photograph of Farnham along with his vehicle information. Lebanon Police setup surveillance of the area and observed Farnham's vehicle pull into the meeting location. Farnham then sent me a text message advising that he was there. Lebanon Officers moved in and arrested Farnham.

12. Farnham was transported to the Lebanon Police Department where he was processed. I advised Farnham of his *Miranda* rights and he waived his rights. Initially Farnham told me that he went to the meet to photograph the suspect vehicle and license plate information in order to report it to the authorities. Farnham would later admit that he made a mistake and that he was dumb and stupid for attention. During his arrest Farnham had $1,960.00 cash on him. Farnham said that some of the money was going to be used for sex acts with Emma. Farnham also acknowledged the $200 price which was previously agreed upon. Farnham said that if John had showed up to the meet he was going to feel things out and if it felt right he would go back to his house. Farnham said if it didn't feel right he was going to go to Hannafords, pick up groceries and go back to work. Farnham said if he did go to John's he maybe would have fingered her and that maybe a young girl could have made his "winky" grow up. Farnham said that he traveled from Vermont to Hannafords.

13. The phone number which Farnham communicated with me from during this investigation is (802) 249-7653. The provider of this number is Verizon Wireless.

14. Farnham was held in preventative detention and transported to the Grafton County House of Corrections.

15. In my training and experience, I have learned that **VERIZON WIRELESS** is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

16. Based on my training and experience, I know that **VERIZON WIRELESS** can collect cell-site data about **(802) 249-7653**. I also know that wireless providers such as **VERIZON WIRELESS** typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information

for various business-related purposes. Collection and review of the historical cell site locations for **(802) 249-7653** during the requested timeframe will corroborate Farnham's statement that he traveled from Vermont to New Hampshire to meet what he believed was a 15-year-old girl for a commercial sex act in violation of 18 U.S.C § 2423(b).

17. Based on my training and experience, I know that wireless providers such as **VERIZON WIRELESS** typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as **VERIZON WIRELESS** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

18. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

19. I further request that the Court direct **VERIZON WIRELESS** to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on **VERIZON WIRELESS**, who will

then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

/s/ Richard A. Norris
Richard A. Norris
Lieutenant
Lebanon NH Police Department

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

Date: 7/30/20
Time: 8:45 am

HONORABLE ANDREA K. JOHNSTONE DANIEL J. LYNCH
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call number **(802) 249-7653**, ("the Account"), that are stored at premises controlled by VERIZON WIRELESS ("the Provider"), headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

## ATTACHMENT B

### Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **May 1, 2020 to May 31, 2020**:

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii. information regarding the historical GPS locations of the device, cell towers, and sectors through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C § 2423(b), Travel with Intent to Engage in Illicit Sexual Conduct, involving David Farnham during the month of May 2020.

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by **VERIZON WIRELESS**, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of **VERIZON WIRELESS**. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of **VERIZON WIRELESS**, and they were made by **VERIZON WIRELESS** as a regular practice; and

b. such records were generated by **VERIZON WIRELESS** electronic process or system that produces an accurate result, to wit:

1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of **VERIZON WIRELESS** in a manner to ensure that they are true duplicates of the original records; and

2. the process or system is regularly verified by **VERIZON WIRELESS**, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____
Date                                              Signature